IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAZZMINE GALLIMORE,          :
    Plaintiff,               :
                             :
    v.                       :          CIVIL ACTION NO. 26-CV-1970
                             :
YOUTH ADVOCATE PROGRAMS,     :
*et al.*,                    :
    Defendants.              :

## MEMORANDUM

**SCOTT, J.**                                          **JUNE  29 , 2026**

Yazzmine Gallimore has filed an employment discrimination claim under Title VII of the

Civil Rights Act of 1964 ("Title VII") against her former employer Youth Advocate Programs[1]

("YAP") and two of its employees, Ashley Foundling and Colleen Neff.  She also seeks to

proceed *in forma pauperis*.  As the Court has instructed Gallimore in a prior decision that

coworkers are not proper defendants in a Title VII case, the coworkers will be dismissed with

prejudice.[2]  For the following reasons, the Court will grant Gallimore leave to proceed *in forma*

---

[1] The spelling of the name of the Defendant is incorrectly recorded on the docket as "Youth Advacate Programs." The Clerk will be directed to correct the spelling.

[2] *See Gallimore v. Merakey*, No. 25-6089, 2026 WL 510725, at *4 n.3 (E.D. Pa. Feb. 24, 2026) ("*Gallimore II*") (stating that the United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, holding the term "employer" as used in Title VII does not encompass individual employees (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996)).
The Court provided Gallimore with extensive information about the law governing Title VII race-based termination, retaliation, and hostile work environment claims in *Gallimore II* 2026 WL 510725, at *3, and an earlier Memorandum dismissing the original complaint in that case, *Gallimore v. Merakey*, No. 25-6089, 2026 WL 309489, at *3 n.2, n.3. (E.D. Pa. Feb. 4, 2026) ("*Gallimore I*").  The decisions gave her instructions on what types of factual allegations she must make to assert these kinds of claims plausibly.

1

*pauperis* and also dismiss the claims against YAP. Gallimore's request for appointment of counsel will be denied as premature.

## I.    FACTUAL ALLEGATIONS[3]

By checking boxes on her Complaint form, Gallimore, who is African American, asserts Title VII race-based discrimination claims based on termination of her employment, a failure to stop harassment, and retaliation based on acts that began on September 16, 2024.[4] (Compl. at 5-7). She asserts on the form portion of the Complaint that she was discriminated against at YAP "for [her] race," suffered harassment, and "[a]fter enduring a hostile work environment, [she] was fired in retaliation after reporting it to HR." (*Id*. at 7.) She also asserts that her supervisors and coworkers ostracized her, making it hard to complete job duties, and a supervisor made false allegations resulting in her termination. (*Id*.)

In the typewritten portion, Gallimore adds that she began working at YAP on September 2, 2024. (*Id*. at 10.) On September 16, she attended her first "supervision" with her immediate supervisor Colleen Neff and her "white partner" Rebekkah Raffensperger. (*Id*.) During that session, Neff became verbally abusive with her about progress notes not being up to standard. (*Id*.) She was given a document to copy into the electronic filing system by Raffensperger, and "ignored for the remainder of the supervision." (*Id*.) After the supervision, she vomited, missed

---

[3] Unless otherwise stated, the facts are taken from Gallimore's Complaint (ECF No. 2) consisting of the Court's form available to unrepresented litigants and attached typewritten pages. The Court deems to the entire submission to constitute the Complaint adopts the pagination supplied to all *pro se* submissions by the CM/ECF docketing system. The Court notes that the pages of the Complaint are out of order, but the entire document appears on the docket.

[4] Gallimore appears to have initially checked a box on the form indicating an additional claim based on disability discrimination, but crossed out the checkmark. As she does not allege she was disabled, the Court understands the initial checkmark to have been a mistake.

2

a "session" and visited a hospital because she was experiencing symptoms of her heart condition. (*Id*.)  She communicated with Neff and program director Ashley Foundling about her sickness. (*Id*.)  Foundling told her she was "already seeing a 'lack of motivation' and that if [the job] wasn't a good fit to let her know."  (*Id*.)  Foundling also claimed that she wasn't reaching out to coworkers to participate in shadow sessions, and Gallimore responded that she was sending emails to coworkers to meet with them.  (*Id*.)  Foundling responded that she needed to call them, despite Gallimore claiming that she was never given phone numbers to do so.  (*Id*.)

When Gallimore returned to work two days later on September 18, 2024, she complained to Foundling that her coworkers were still not responding.  (*Id*.)  On an unstated date, her "white partner" Raffensperger acted aggressively during a session and in a different session around the beginning of October, attempted to intimidate Gallimore "when leaving the session."[5]  (*Id*.)  At a session on October 4, Raffensperger "dismissed and talked over" Gallimore as she was speaking with a client.  (*Id*.)  The next day, Gallimore discussed boundaries with Raffensperger when she waved her hands in Gallimore's face, but she continued to use her hands during the conversation and to wave them in her face.  (*Id*. at 12.)  Raffensperger made comments about the job "not being a good fit" for Gallimore and that she should apply elsewhere.  (*Id*.)  During a session on October 6 at a client's home, Raffensperger "clapped her hands" in Gallimore's face when asking for forms stating, "I told you to get the authorization forms."  (*Id*.)

Foundling, Neff, and Gallimore had a phone conversation on October 14, 2024 about progress notes, "which resulted in a corrective action."  (*Id*.)  Foundling stated Gallimore was not completing progress notes within the 24 hour time frame and was not fixing corrections

---

[5] It is unclear from this allegation if it was Gallimore that was leaving the session or if it was Raffensperger who was leaving.

Foundling had sent, "despite [Gallimore] attempting to communicate the proof that [she] was completing them." (*Id.*) She was also told that she missed the 30-day deadline for assessments and that there would be a follow up meeting with the regional director. (*Id.*) Gallimore wrote a statement in response to the write-up stating that she did not intend to be argumentative and was unaware that she missed the 30-day deadline "seeing that I received my first lead case on October 1st, 2024." (*Id.*) On October 16, she received more emails about incomplete progress notes and Foundling sent her "progress note corrections through email in which she screamed in all caps and exclamation points about the corrections she needed completed." (*Id.*) After double checking, Gallimore responded that the corrections were completed and she was "unsure how to move forward." (*Id.*)

On October 16, 2024, Gallimore requested a meeting with the regional director, but was told she would be away all week. (*Id.*) Around the next day, Gallimore received a lengthy email from Foundling about complaints YAP was receiving about her, including complaints by Raffensperger that Gallimore was not "retaining information" she provided to her during sessions, and complaints from a training director that Gallimore did not have her camera on during a training. (*Id.*) On October 23, Foundling "reached out saying there was a breach in HIPPA [sic]," and put her on suspension. (*Id.*) The next day, October 24, 2024, Gallimore emailed HR to report a hostile work environment for which she received a ticket number, but no other response. (*Id.* at 16.) When she asked Foundling about the breach, Foundling told her that she could not give her any additional information. (*Id.*) Foundling sent Gallimore a "corrective action" to sign. (*Id.*) On November 6, 2024, Gallimore was fired because she used clients' names in open written documentation and in session, in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). She claims that YAP discriminated against her

4

based on her race, "fired her in retaliation after reporting it to HR and the unemployment agency," and harassed her creating a hostile work environment. (*Id*.)  Gallimore seeks money damages. (*Id*.)

## II.    STANDARD OF REVIEW

The Court grants Gallimore leave to proceed *in forma pauperis*.   Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the Complaint as true, draw all reasonable inferences in the Gallimore's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout

5

procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112).  Gallimore's Complaint fails to allege plausible discharge, hostile work environment, and retaliation claims under Title VII.

### A.   Termination

To state a claim for employment discrimination under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that her membership in a protected class was "either a motivating or determinative factor" in her employer's adverse employment action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  Gallimore asserts she is African American and was discharged by YAP.  However, she does not allege facts to raise a reasonable expectation that her race was a motivating or determinative factor in her YAP's decision to terminate her employment.  Rather, Gallimore recounts that Ashley Foundling terminated her due to her violation of HIPAA.  (Compl. at 16.)  She also recounts numerous other performance issues during her employment.  (*Id*. at 10, 12, 16.)  Other than pointing out

6

that Raffensperger was white, Gallimore does not mention race at all in her factual allegations as being a factor in her termination.  In short, because she alleges nothing to raise an inference that she was terminated because of her race, her race-based Title VII termination claim will be dismissed.

### B.    Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014).  "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (cleaned up)); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  As the Court informed Gallimore, "[t]he question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Gallimore I*, 2026 WL 510725, at *3 (quoting *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Gallimore's hostile work environment claim is not plausible.  Stated simply, she fails to allege anything to satisfy the elements of the claim, particularly that she suffered intentional discrimination because of membership in a protected class.  Gallimore mentions numerous instances of negative feedback from YAP supervisors about her work performance, negative comments about her progress notes that she considered to be verbally abusive, comments about her lack of motivation and failure to complete progress notes timely, criticism that she failed to have her camera on during a training, an "all caps and exclamation points" email, and that Raffensberger failed to respect her personal space.  But nothing about these alleged incidents relate to severe intentional race-based discrimination to support a Title VII hostile work environment claim.  This claim too will be dismissed.

### C.      Retaliation

Gallimore's claim that she was terminated in retaliation for engaging in Title VII protected conduct also fails.  As the Court instructed Gallimore previously, for a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Gallimore II*, 2026 WL 309489, at *3 n.3 (quoting *Connelly*, 809 F.3d at 789).  Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Not every complaint about employment entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry*, 548 U.S. at 68 (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  "Rather, only complaints about discrimination prohibited by

8

Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id*. at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, *Inc*., 450 F.3d 130, 135 (3d Cir. 2006)).  "General complaints of unfair treatment will not suffice." *Id*. (citing *Barber*, 68 F.3d at 702).

On the "protected conduct" element, Gallimore states she emailed HR to report a hostile work environment on October 24, 2024.[6]  (Compl. at 16.)  Stated simply, because her direct hostile work environment claim is not plausible due to the missing element of severe intentional race-based discrimination, her attempt to base a retaliation claim on her report of a hostile work environment is also not plausible.  Without a tie-in to racial discrimination, her report of a hostile work environment is only a general complaint about unfair treatment that does not constitute protected activity.  *See Barber*, 68 F.3d at 702 ("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."); *Davis*, 417 F. App'x at 202-03 (holding that only complaints about discrimination prohibited by Title VII constitute protected activity).  Accordingly, the Title VII retaliation claim will also be dismissed.

## IV.    CONCLUSION

For these reasons, Gallimore's Complaint will be dismissed.  The coworkers will be dismissed with prejudice.  Although the Court has previously provided Gallimore with the legal elements of Title VII discrimination claims, and described the kinds of facts she had to allege to

---

[6] Gallimore also mentions in passing that she made a report to the unemployment agency. (Compl. at 16.)  She provides no other details about this to state any of the elements of a Title VII retaliation claim.

state plausible violations of Title VII, the Court will grant her leave to file an amended complaint if she is able to allege facts to cure the defects in her claims against YAP. Gallimore's request for appointment of counsel will be denied as premature. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that, in determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law"). An order containing additional information on amendment will be entered separately.

**BY THE COURT:**

_____
**KAI N. SCOTT, J.**